**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL GOODMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 09 C 5954** |
| | ) | |
| **CHICAGO POLICE OFFICER ANTHONY** | ) | **Magistrate Judge Finnegan** |
| **BABICZ, STAR #12652; Individually and** | ) | |
| **As Employee/Agent of the CITY OF** | ) | |
| **CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Chicago Police Officer Anthony Babicz arrested Plaintiff Samuel Goodman on charges of drug possession with intent to distribute. Following dismissal of the criminal charges for lack of probable cause, Plaintiff filed this federal lawsuit alleging (in part) that Defendant Babicz falsely arrested him in violation of 42 U.S.C. § 1983, and maliciously prosecuted him in violation of Illinois state law. After completing virtually all pretrial proceedings before Judge Robert W. Gettleman, the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This Court held a jury trial from July 9 through 11, 2012, and on July 12, 2012, the jury returned a verdict in favor of Defendant Babicz on both counts. (Doc. 98, 99).

Plaintiff has now filed a motion for a new trial, arguing that the Court erred by allowing evidence of (1) his admitted heroin use the day before the arrest; and (2) his numerous arrests and prior convictions. For reasons discussed below,

the Court finds that this evidence was properly admitted and therefore denies the motion for a new trial.

## BACKGROUND

As Plaintiff aptly observes in his motion, the parties presented "completely different and irreconcilable versions of events" leading up to his arrest on November 20, 2007 for possession of heroin and cocaine with intent to distribute. (Doc. 100, at 2). Plaintiff testified that he was walking to a store near his home to buy cigarettes when he stopped to talk with a friend on the sidewalk. Defendant Babicz pulled up in his squad car, ordered the men over to his car, and proceeded to handcuff and question them. He then placed both men in the back of the squad car, but ultimately let the friend go and arrested Plaintiff alone on drug charges. Plaintiff maintains that the officer acted without justification in arresting and charging him since he never possessed or sold any narcotics that day.

Defendant Babicz, on the other hand, testified that while on patrol he saw Plaintiff standing on the sidewalk in front of a house. The officer returned to the area a few more times over the next couple of hours and Plaintiff was still there. The fourth time that he drove by, the officer parked and observed Plaintiff engage in what appeared to be the sale of narcotics. Among other things, he saw Plaintiff remove a bag from the rear side of the house and then give an item from the bag to a man on the sidewalk in exchange for currency. Rather than make an arrest, Defendant Babicz called his partner, Officer Homer, who was patrolling elsewhere with probationary Officer Pruski, and arranged to meet a few blocks

away to devise a game plan. After meeting, the three officers drove to the area where Plaintiff was by then alone. Officers Homer and Pruski detained Plaintiff near the squad car while Defendant Babicz walked to the side of the house to search for the bag that he said he had seen Plaintiff retrieve. After he found a bag containing packets of crack cocaine and heroin within a small cutout of the house, Plaintiff was arrested.

In arguments to the jury, Plaintiff's counsel acknowledged that Defendant Babicz had recovered drugs from the cutout of the house, but argued that he lied about witnessing Plaintiff retrieve and sell the drugs prior to this. The parties were in agreement that shortly after Plaintiff was placed in the police squad car, he appeared to be in distress so an ambulance was called. Plaintiff testified that he experienced an anxiety attack or seizure causing him to shake, be short of air, and pass out. Defendants argued that Plaintiff faked these symptoms (as he allegedly had done on his three most recent arrests) so he would be taken to the hospital rather than the police station.

After Plaintiff was given medication and released from the hospital, he was taken to the police lockup and later to Cook County Jail where he was held for 21 days. During the trial, he testified about the awful conditions while in custody and described in detail the strip search that was done and how he felt humiliated. He also spoke of the emotional trauma he experienced by being away from his fiancée since she had severe medical problems and relied on him for care. He informed the jury that she died only a couple of weeks after his release from jail and three days before their planned wedding.

Defendants sought to undermine Plaintiff's testimony and claimed damages by cross-examining him about certain facts that Plaintiff sought to exclude. The Court allowed some of this evidence. Plaintiff argues this was error and seeks a new trial.

## DISCUSSION

A court may order a new trial pursuant to Federal Rule of Civil Procedure 59(a) if "the jury's 'verdict is against the manifest weight of the evidence, . . . or if for other reasons the trial was not fair to the moving party.'" *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (quoting *Marcus & Millichap Inv. Servs. of Chicago, Inc. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011)). Where, as here, a party seeks a new trial based on alleged legal errors, "[t]he party first must show an abuse of discretion in the Court's rulings, which alone is a steep hill to climb; additionally, he must then show that any alleged errors were substantial enough to deny him a fair trial, which requires proof that a significant chance exists that they affected the outcome of the trial." *James v. Williams*, No. 10 C 5350, 2012 WL 3581168, at *1 (N.D. Ill. Aug. 15, 2012) (internal quotations omitted). *See also Whitehead v. Bond*, 680 F.3d 919 (7th Cir. 2012) ("A new trial is warranted only if the error has a substantial and injurious effect or influence on the determination of a jury, and the result is inconsistent with substantial justice.") (internal quotations omitted).

## A. Heroin Use the Day Before the Arrest

While at the hospital following his arrest, Plaintiff spoke with medical personnel. In the "Social History" section of Plaintiff's medical records from that

evening, a hospital staff member wrote "heroin-snort, used yesterday." (Doc. 58, at 6). Plaintiff filed a motion *in limine* to exclude this evidence, arguing that it was improper propensity evidence under Federal Rule of Evidence ("FRE") 404(b), "severely prejudicial" under FRE 403, and irrelevant to whether Defendant had probable cause to arrest him the next day for possessing and selling heroin. (*Id.*).

Judge Gettleman denied Plaintiff's motion "in principle" on July 27, 2011, explaining that (1) "[t]he hospital records may be offered as a business record if properly authenticated and a proper foundation is laid"; and (2) "any statement made by plaintiff would be admissible as an admission against interest." (Doc. 62, at 2). Prior to trial, Plaintiff asked this Court to reconsider Judge Gettleman's ruling, again arguing that his heroin use the day before his arrest constituted inadmissible and prejudicial propensity evidence under FRE 404(b) and 403. (Doc. 84). This Court denied the motion, (Doc. 86), but did exclude evidence of Plaintiff's admitted heroin use three months before the arrest, as well as evidence that Plaintiff had been arrested for heroin possession several times.

In his motion for a new trial, Plaintiff argues that evidence of heroin use the day before the arrest is classic propensity evidence that must be excluded under FRE 404(b). In Plaintiff's view, the evidence "created the risk that the jury inferred that Plaintiff possessed drugs on the date of his arrest simply because he had done so in the past." (Doc. 100, at 6). It is true that Rule 404(b) "bars the admission of '[e]vidence of a crime, wrong, or other act' that is intended to show the character of a [party] and thereby suggest conformity with such character."

5

*United States v. Howard*, 692 F.3d 697, 703 (7th Cir. 2012) (quoting FED. R. EVID. 404(b)(1)). Such evidence may be admissible, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* (quoting FED. R. EVID. 404(b)(2)).

The Seventh Circuit has set forth a four-part test for determining whether other-acts evidence is admissible:

> (1) the evidence is directed toward establishing a matter in issue other than the [individual]'s propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the [individual] committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Id.* (quoting *United States v. Reese*, 666 F.3d 1007, 1015 (7th Cir. 2012)). The fourth prong "incorporates Rule 403's balancing of prejudice and probative value." *Id.*

Here, Plaintiff's admission that he used heroin the day before his arrest was offered by Defendants to show that he had access to heroin on the day of the arrest. *See, e.g., United States v. Miller*, 673 F.3d 688, 695 (7th Cir. 2012) (defendant's "prior possession and display of the rusty grey pistol [in February] suggest that he owned or at least had the ability to exercise control over that rusty grey pistol [in April]."). Indeed, as Defendants argued in closing, the heroin that Plaintiff admitted using the day before the arrest could well have been part of the same batch of heroin that was recovered by Defendant Babicz. To this end,

6

Plaintiff was asked on cross-examination what he did with the heroin after using it on November 19th, and where he had stored it. Plaintiff then had the opportunity to tell the jury that he had used up the heroin on the 19th and never possessed any heroin on the 20th.

Plaintiff argues that evidence of his prior heroin use was irrelevant since Defendant Babicz was unaware of the prior use when he made the probable cause determination. Contrary to Plaintiff's assertion, Defendants never argued that Plaintiff's possession and use of heroin on November 19, 2007 "meant that Defendant Babicz had probable cause to arrest him for possession of narcotics the following day." (Doc. 100, at 7).[1] What they argued was that Defendant Babicz had probable cause for the arrest because he saw Plaintiff possess and sell narcotics on November 20, 2007. Plaintiff denied doing so, and his attorney argued that Defendant Babicz made the whole thing up. In evaluating the evidence and the credibility of the witnesses, the jury was entitled to hear that Plaintiff had access to heroin since he admitted possessing and using it only one day before.

Plaintiff attempts to downplay the proximity in time between the admitted heroin use on November 19th and his arrest for heroin possession on November 20th, but this crucial fact distinguishes his case from every authority cited in his brief. In *United States v. Miller*, for example, the Seventh Circuit held that the

---

[1]     The jury was specifically instructed that "Plaintiff must prove that defendant did not have probable cause to arrest him for possession of narcotic substances *on November 20, 2007.*" (Doc. 95, at 19) (emphasis added).

government should not have been allowed to mention the defendant's 2000 conviction for drug dealing at a trial charging him with drug possession in 2008. 673 F.3d at 699.  In *United States v. Courtright*, 632 F.3d 363 (7th Cir. 2011), the district court improperly admitted evidence that the defendant, who was charged with the sexual assault of S.J., had been accused of sexually assaulting L. Miller nine years earlier.  *Id.* at 367, 369-70.  In *United States v. Hicks*, 635 F.3d 1063 (7th Cir. 2011), the Seventh Circuit found that in the defendant's trial for selling cocaine in July 2006, the district court erred in admitting evidence of the defendant's prior convictions for selling and possessing cocaine in 1998 and 2002.  *Id.* at 1066, 1069-74.  *See also Rushing v. DeBose*, No. 10 C 3551, Slip Op., Doc. 47, at 2-5 (Sept. 30, 2011) (granting motion *in limine* to exclude evidence of the defendant's 2006 conviction "for an unspecified felony drug crime" at a trial relating to his June 11, 2009 arrest for drug possession).  Unlike these cases, Plaintiff's use of heroin one day before the arrest was not offered to show that he had a propensity to possess heroin.  *See Howard*, 692 F.3d at 703 (evidence of a crime admissible to show opportunity).

In addition to being evidence of access to the drug, the heroin use was also relevant to rebut Plaintiff's direct testimony about his claimed damages and emotional distress.  Plaintiff testified that he lived with his elderly parents and an extremely ill fiancée who suffered from chronic asthma and depended on him for care.  He noted that she would be sleeping and suddenly need a ventilator in order to breathe, that quite a few times he had rushed her to the hospital, and that once her heart had even stopped.  He said that about a week before the

8

arrest, her condition had deteriorated. Therefore, he felt tremendous pressure and stress when he was locked up because no one was caring for his fiancée. She died approximately two weeks after he was released from custody and only a few days before their planned wedding.

After this testimony, defense counsel argued that Plaintiff had opened the door to cross-examination about drug use since he admittedly had used heroin at a time when he claimed to be the only one able to care for his ill fiancée, and was seeking damages stemming from his distress over losing the opportunity to spend time with her. Defense counsel proceeded to question Plaintiff on these issues, seeking to establish that he could not care for his fiancée when he was high on heroin, and that he risked arrest and custody – and thus separation from her – when he used and possessed heroin. Defense counsel also asked non-leading questions of Plaintiff about the timing of his heroin use on November 19th and how long the effects of the heroin lasted, in order to explore whether his perceptions were impaired on November 20th, making him an unreliable witness. Counsel further asked whether Plaintiff's use of heroin had ever resulted in seizures like the one he claimed to suffer after his arrest. For all of these reasons, the evidence of Plaintiff's admitted heroin use on November 19th was probative of liability and damages as well as Plaintiff's truthfulness.

With respect to FRE 403, Plaintiff cites *United States v. Gallardo*, 497 F.3d 727 (7th Cir. 2007), for the proposition that "[t]here is . . . 'considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony.'" *Id.* at 733 (quoting *United*

*States v. Mojica*, 185 F.3d 780, 788-89 (7th Cir. 1999)). Plaintiff also stresses the Seventh Circuit's warning that "[t]he risk of a jury using [prior bad acts] evidence [as proof of propensity] is particularly high where, as here, the prior bad act may establish an addiction to something – like . . . drug use . . . – and thus a motive to commit that crime again." *Courtright*, 632 F.3d at 370.

Here, Plaintiff was not just a witness as in *Mojica*, but the individual who filed this lawsuit. In addition, this was not a criminal case charging Plaintiff with drug possession, but a civil lawsuit in which Plaintiff was seeking money damages for an allegedly unlawful arrest. Plaintiff's concern that his use of heroin the day before his arrest "implies that he is more likely to have committed the offense for which he is being tried" therefore does not apply. (Doc. 100, at 6) (quoting *United States v. Harding*, 525 F.2d 84, 89 (7th Cir. 1975)).

As explained earlier, evidence of Plaintiff's admitted heroin use on November 19th was probative of liability, damages, and Plaintiff's truthfulness. While the evidence served to undermine Plaintiff's contentions, "[t]his kind of effect is not 'prejudice' at all … let alone 'unfair prejudice.'" *Cobige v. City of Chicago*, 651 F.3d 780, 785 (7th Cir. 2011). Because the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, the evidence was properly admitted at trial.

**B.    Criminal Arrests and Convictions**

Plaintiff next argues that he was unfairly prejudiced because the jury heard (1) improper bad character evidence, namely, that he had been arrested numerous times; and (2) evidence of his prior convictions. He contends that this

evidence was "extraneous" and cast him in the "most negative light possible." (Doc. 100, at 12).

1.      **Arrests**

        a.      **August 2007, February 2007, November 2004**

Plaintiff filed two motions *in limine* relating to his prior arrests.  In motion *in limine* 1, he identified his three most recent arrests prior to November 20, 2007 (August 8, 2007, February 19, 2007, and November 16, 2004), and asked to exclude these since none had resulted in a conviction.   (Doc. 58, at 1-2). Defendants argued in response that they were entitled to offer evidence about these arrests because, after each of them, Plaintiff allegedly suffered a seizure or other medical condition that resulted in the police taking him to the hospital – just as happened on November 20th.   Defendants planned to argue that Plaintiff fabricated the seizure on November 20th to avoid being questioned and (among other things) this showed consciousness of guilt.  (Doc. 60, at 1-4).   Perhaps anticipating this, Plaintiff filed motion *in limine* 7 seeking to exclude any argument or evidence regarding seizures during the three prior arrests.  (Doc. 58, at 5).

Judge Gettleman made a conditional ruling on this motion:

> [I]f plaintiff does not testify about having a seizure during the arrest,
> defendant may not ask questions about plaintiff's alleged seizures
> during prior arrests.  If plaintiff does testify about having a seizure
> during the arrest in question, he has opened the door to further
> questions, and the court will address the scope of such questions at
> the time of trial.

(Doc. 67 ¶ 2).  Early in the trial, Plaintiff opened the door.  In opening statements, his counsel informed the jury that Plaintiff had a seizure after he was placed in

the backseat of the police squad car on November 20th, resulting in his hospitalization. Plaintiff later testified that while he was in the squad car, he began to feel lightheaded, like he was going to pass out, and had trouble breathing. He described this as an anxiety attack but also said he was taking Dilantin for seizures. According to Plaintiff, he passed out in the squad car and did not awaken until he was at the hospital. After receiving medication from the doctors, he said he no longer felt shaky.

Since Plaintiff informed the jury about his anxiety attack/seizure on November 20th, it was proper for Defendants to elicit evidence about the medical problems that Plaintiff experienced after each of the three preceding arrests in order to argue that Plaintiff faked the seizure on November 20th. During cross-examination, Plaintiff admitted that after he was arrested on August 8, 2007, he experienced anxiety and was taken to the hospital. He similarly admitted that following his arrest on February 19, 2007, he told the officer he suffered from asthma and was taken to the hospital. Finally, Plaintiff acknowledged that he had complained of a medical condition after being arrested on November 16, 2004.

In his motion for a new trial, Plaintiff does not address why it was error to admit the fact of these three arrests, including his subsequent medical problems and hospital trips, after he opened the door by testifying about his seizure/anxiety attack. To avoid the danger of unfair prejudice, the jury was not told the nature of the crimes for which Plaintiff was arrested on any of these prior occasions. Further, on redirect examination, Plaintiff's counsel elicited that these three

arrests (and the one on November 20th) were Plaintiff's only arrests over the preceding ten years. Under these facts, the challenged evidence concerning these three prior arrests was properly admitted at trial. The evidence was clearly relevant and the probative value was not substantially outweighed by the danger of unfair prejudice.

### b.    Other Arrests

Plaintiff argues that the Court still erred by admitting evidence of several additional arrests from his past. These came to light in Defendants' response to the motion *in limine* to exclude the three prior arrests discussed above. Defendants noted that Plaintiff had numerous other arrests, "not just these three," and sought to admit evidence of these other arrests given Plaintiff's assertion of emotional damages. (Doc. 60, at 3). Defendants reasoned: "[i]f the jury is made aware of the fact that this was plaintiff's 24th arrest, the jury could conclude that plaintiff would not have been as emotionally traumatized by the November 20, 2007 arrest as he claims to have been." (*Id.*).

Judge Gettleman ruled that Defendants could ask Plaintiff "whether he has been arrested in the past and how many times, without going into any other details." (Doc. 67 ¶ 1). When the parties appeared for trial before this Court, Plaintiff's counsel sought clarification and guidance on this ruling to avoid opening up the door to evidence about individual arrests rather than simply the aggregate number of arrests. Plaintiff's counsel suggested that his client be asked whether he'd had contact with the law before and been arrested 24 times. The Court agreed with this approach. Notably, Plaintiff did not then, and does

13

not now, respond to the specific arguments Defendants offered for why the aggregate number of prior arrests was probative and not unfairly prejudicial. Nonetheless, this Court will address them briefly.

First, one large component of Plaintiff's alleged damages was the significant emotional trauma that he said he suffered by virtue of being subjected to a strip search and then held in Cook County Receiving and a small cell. Plaintiff testified that he was humiliated by the strip search, which he described for the jury in great detail. As for "Receiving" at Cook County Jail, Plaintiff said this was one of the worst places he had ever been in his life and described all the specific reasons for this (e.g., 150 to 200 persons in a small area, including gang bangers, murderers, robbers, people who are mentally ill, and people with open sores on their faces).

Under the circumstances, the fact that Plaintiff had been arrested, strip searched, and jailed two dozen times before November 20th was probative of the extent of his emotional distress. *Gribben v. City of Summit*, No. 08 C 123, 2010 WL 2928094, at *3 (N.D. Ill. July 20, 2010) (denying motion *in limine* seeking to bar evidence of prior arrests where the plaintiff alleged that "his arrest in this case . . . caused him to suffer severe emotional distress."); *Redmond v. City of Chicago*, No. 06 C 3611, 2008 WL 539164 (N.D. Ill. Feb. 26, 2008) (declining to exclude *in limine* evidence of prior arrests, noting that such evidence "is relevant because if [the plaintiff] had been arrested on prior occasions the trier of fact could conclude from such evidence that [he] would not have been as emotionally traumatized by the May 8, 2004, arrest as he claims since he had already

14

experienced the arrest process on prior occasions."). Had Plaintiff been allowed to exclude evidence of his prior arrests, this would have unfairly prevented Defendants from challenging his claim of severe emotional distress from the strip searches and time in Cook County Jail after the November 20th arrest. The probative value of this evidence is thus without question.

To minimize the danger of unfair prejudice, Defendants were not allowed to question Plaintiff about the specific crimes for which he had been arrested. Further, on redirect examination, Plaintiff suggested to the jury that most of the prior arrests had been for misdemeanors.[2] He also reminded the jury that he had no arrests since November 2007 and only four arrests over the past 10 years. Finally, the jury heard during Plaintiff's direct testimony that at the time of trial he was in a four-day a week job retraining program, was working on his GED at a city college, and had received a certificate from the "Teach" program where he had perfect attendance and had learned to clean in an environmentally safe manner.

Under all the circumstances presented here, the probative value of the aggregate number of arrests was not substantially outweighed by the danger of unfair prejudice. Therefore, the evidence was properly admitted.

---

[2] Plaintiff also testified that he was not taken to Cook County Jail after each arrest – only after felony arrests. This was contrary to his testimony during cross-examination when he said he was taken to Cook County Jail after all 24 arrests and went through the same processing as he did on November 20th.

## 2.     Convictions

Plaintiff also contends that the Court erred in allowing evidence of his prior convictions in violation of FRE 609.  Prior to trial, he moved *in limine* to exclude evidence of four felony convictions from the 1990s: a narcotics conviction in January 1996; a weapon and possession conviction in July 1996; a possession conviction in July 1999; and a forgery conviction in July 1999.  (Doc. 58, at 2-3). Defendants argued that the forgery conviction was admissible because forgery is the type of crime that bears directly on character for truthfulness.  (Doc. 60 at 4). They argued that the narcotics convictions were admissible under FRE 404(b) because they would show Plaintiff's "motive, intent, opportunity, preparation, and plan to possess narcotics as a lifelong narcotics user."  (*Id.*).  Finally, they argued that the convictions were relevant to rebut Plaintiff's claimed damages.  (*Id.*). Judge Gettleman granted the motion to bar these prior convictions.  (Doc. 62, at 1).

Plaintiff's counsel perhaps was unaware of, and so did not move to exclude, a federal forgery conviction in 2001 for which Plaintiff received a sentence of 18 months' incarceration, followed by an additional 4 months' incarceration in 2004 when he violated probation.  On the day of trial, the parties raised and argued the admissibility of this conviction for the first time.  Defense counsel asserted that both the conviction and sentence, as well as the convictions and sentences served in the 1990s, were highly relevant to claimed damages from the alleged malicious prosecution.  In assessing the extent of Plaintiff's damages from spending 21 days in jail, defense counsel wanted the

jury to consider that Plaintiff had spent approximately five years in prison in the 1990s, and then another two and a half years in prison in 2001 and 2004.

Plaintiff's counsel, for his part, argued that Plaintiff had not served as much time as Defendants claimed, and that time served in the 1990s was irrelevant in any event since Plaintiff had been a much younger man then. While acknowledging that Plaintiff had served time for the 2001 federal conviction much more recently (within ten years), counsel noted that for purposes of damages, he planned to emphasize that Cook County Jail is far worse than other institutions. This Court informed counsel that it would defer ruling on the issue until after hearing Plaintiff's testimony and further argument.

Plaintiff began his direct testimony by identifying several of his past employers: Caesar's Palace; the Riviera; Cola-Cola; Olive Garden; Denny's; and Adams Transportation. He also described some of the jobs that he had held over the years: porter; laborer; line cook; driver for a transportation company. While he did not say when he held these positions, Plaintiff acknowledged during cross-examination that he worked some of these jobs while he was living in Las Vegas between the years of 1978 and 1981.

As discussed previously, Plaintiff went on to testify about how awful it was when he was held in custody, including the fact that his cell was so small (6 feet by 7 feet). Although the Court had not yet ruled on the admissibility of the convictions, Plaintiff's counsel asked whether Plaintiff had a 2001 felony conviction from this building (the federal courthouse) and he acknowledged that he did. Counsel followed up by eliciting that Plaintiff had not been arrested since

the arrest by Defendant Babicz in 2007 (5 years earlier). From there, counsel had Plaintiff testify about his job training and studies toward a GED.

After Plaintiff finished testifying on direct examination, defense counsel argued that Plaintiff had opened the door to cross-examination on a number of fronts, including how much time he had spent in custody prior to the arrest on November 20th. Counsel referenced Plaintiff's testimony about how terrible it was to be in custody for 21 days, particularly for a 51-year-old man. Since Plaintiff had been in and out of prison from the age of 42 to 52, counsel argued, the brief time in custody would not have caused the great emotional trauma that Plaintiff was claiming. Defense counsel also sought to refute Plaintiff's testimony about how awful it was for him to be in a small holding cell and strip searched. In that regard, counsel pointed out that following each conviction, Plaintiff had been forced to undergo a strip search and live in a small cell. Finally, counsel argued that since Plaintiff had attempted to establish credibility with the jury by talking about his extensive work history dating back many years, the defense was entitled to inform the jury that in 1996 he "worked" as a drug dealer, resulting in a conviction for possession with intent to deliver heroin.

Plaintiff's counsel opposed admission of such evidence on the grounds that it was irrelevant and unfairly prejudicial. Counsel also took issue with the claim that Plaintiff had spent significant time in custody, noting that defense counsel was erroneously assuming that whatever sentence was imposed was the length of time in custody.

The Court ruled that Defendants could not offer evidence of how much time Plaintiff had spent in custody prior to the arrest except to the extent that the custody involved the same facility that he complained about during direct examination. Further, the Court barred Defendants from eliciting the nature of any of the prior convictions, including the federal forgery conviction (and violation of probation) for which he had served time three years before the November 20th arrest. On the other hand, Defendants were allowed to elicit the <u>fact</u> of the felony convictions in the 1990s (Plaintiff already had testified about the 2001 federal conviction). They were also allowed to bring out that Plaintiff had spent some time in custody after 2001 when Plaintiff already was an older man.

During the cross-examination that followed, Plaintiff acknowledged his felony conviction "in this courthouse" and that he had been sentenced to a period of incarceration. Counsel then asked Plaintiff to admit that he had been convicted of four felonies in state court between 1996 and 1999, and Plaintiff did so.

In his motion for a new trial, Plaintiff argues that it was error to admit evidence of *any* of the convictions, but mainly focuses his attention on the state court convictions between 1996 and 1999. Plaintiff asserts that they were inadmissible under FRE 609(b), and that the "substantial prejudicial effect that resulted from informing the jury of widespread felony convictions spanning over two decades, could not outweigh, let alone *substantially outweigh*, the minimal probative value of permitting the admission of these convictions." (Doc. 100, at 11) (emphasis in original).

FRE 609 sets forth the rules that apply "to attacking a witness's character for truthfulness by evidence of a criminal conviction." FED. R. EVID. 609(a). In a civil case, a felony conviction "must be admitted" to attack truthfulness "subject to Rule 403." *Id.* However, if by the time of the testimony, more than 10 years have passed since the later of the conviction or release from confinement, the evidence of the conviction "is admissible only if … its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." FED. R. EVID. 609(b).[3]

Plaintiff argues that the admission of the fact of his convictions in 1996 was erroneous because the probative value was "unsupported by any specific facts or circumstances" under Rule 609(b). (Doc. 100, at 10). But this analysis misses the mark since Defendants did not offer the convictions to attack Plaintiff's "character" for truthfulness. Rather, Defendants argued that the fact of these convictions, which resulted in him serving some time in custody (not quantified), was necessary to undermine specific testimony Plaintiff had offered to bolster his damages. As Defendants note, the Seventh Circuit in *Cobige* said Rule 609(b) has "no bearing" in such a situation. 651 F.3d at 784-85.

In support of a new trial, Plaintiff relies heavily on the Seventh Circuit's decision in *United States v. Shapiro,* 565 F.2d 479 (7th Cir. 1977), in which the court overturned a conviction because the lower court had allowed evidence of two old convictions under Rule 609(b) – one 38 years earlier and the other 24

---

[3]    Rule 609(b) also requires that the proponent give written notice of intent to use the convictions, but Plaintiff is not arguing lack of notice.

years earlier. *Shapiro* is distinguishable in important respects. Most fundamentally, the government in *Shapiro* offered the convictions solely to attack the defendant's general character for truthfulness, bringing Rule 609(b) into play. According to the court, the government was concerned that the 80-year-old defendant appeared "grandfatherly" and "blameless" so wanted the jury to know of his convictions. *Id.*

Moreover, for a number of reasons, the danger of unfair prejudice was far greater in *Shapiro* than in the case at hand. First, *Shapiro* was a criminal case. *See, e.g.*, FED. R. EVID. 609(a), Advisory Committee Notes to 1972 Proposed Rules (the safeguards in this rule are "of particular significance to an accused who elects to testify."). Second, the jury was allowed to hear the specific nature of the convictions (bankruptcy fraud and tax evasion), not simply that the witness had old "convictions." *Shapiro*, 565 F.2d at 481. Third, the old convictions involved crimes that were similar to those for which the defendant was on trial. *Id.* According to the court, "when the prior conviction and the charged act are of a similar nature, the danger increases. The jury is more likely to misuse the evidence for purposes other than impeachment, that is, to regard the prior convictions as evidence of a propensity to commit crime or of guilt, despite instructions to the contrary." *Id.*

Here the jury heard only that Plaintiff had "convictions" (including some old ones dating as far back as the work history that he summarized in detail on direct) and served some time in custody. Plaintiff opened the door to this evidence when he tried to bolster his damages claim by painting a certain picture

of himself and his circumstances that was less than forthright. By sanitizing and restricting the specific evidence that Defendants were permitted to elicit in response, the Court ensured that the probative value of that evidence was not substantially outweighed by the danger of unfair prejudice.

## C.     Harmless Error

For the reasons already explained, this Court is satisfied that the evidence that Plaintiff challenges was properly admitted and so there is no need to determine whether any "error" was harmless. It is worth noting, however, that the premise of Plaintiff's harmless error analysis is that *none* of the evidence at issue should have been admitted. He thus considers the *cumulative* effect of admitting all three categories of evidence (heroin use, arrests, and convictions), arguing that if *all* of this evidence had been excluded, the outcome of the trial would have been different. Further, Plaintiff's harmless error analysis relies upon a skewed summary of the trial that does not reflect the totality of the evidence considered by the jury.[4] The Court need not recite all of the evidence here. What matters is that the jury considered that evidence – including matters that favored and hurt both sides – before reaching its verdict.

Plaintiff argues, in essence, that he would have prevailed in his lawsuit had he been allowed to present to the jury a version of his circumstances and

---

[4]     Plaintiff highlights only the evidence most helpful to him when asserting that "all of the evidence at trial…established the Plaintiff's version of events as the more credible one." (Doc. 100, at 13). Plaintiff omits, for example, any mention of the testimony of the friend he purportedly stopped to talk with on November 20, 2007, which Defendants argue conflicted in key respects with his own account of events.

damages without contradiction by Defendants. That may be so but since Defendants were entitled to undermine his testimony and alleged damages, the evidence (in sanitized form to avoid unfair prejudice) was properly admitted and considered by the jury. Plaintiff is not entitled to a new trial.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for a New Trial (Doc. 100) is denied.


ENTER:

Dated: January 14, 2013

SHEILA FINNEGAN
United States Magistrate Judge